[No. 17573.   Department Two.   February 10, 1923.]

BEAVER CREEK LUMBER COMPANY, *Appellant,* v.
MARY RISSE, *Respondent.*[1]

EMINENT DOMAIN (126)—PROCEEDINGS—VALUE OF LAND—EVIDENCE
—ADMISSIBILITY.  In eminent domain proceedings to condemn the
right to maintain a dam raising the height of the "water table"
affecting agricultural land, where a witness, testifying that the
proper height of a permanent water table should not be closer than
three feet, explanatory evidence as to the formation of the subsoil
is not material; since the "water table" means the upper limit of the
water, influenced by capillarity.

Appeal from a judgment of the superior court for
Thurston county, Wilson, J., entered January 30, 1922,
upon the verdict of a jury rendered in favor of the de-
fendant, in condemnation proceedings.  Affirmed.

*Vance & Christensen,* for appellant.

*Troy & Sturdevant* and *Geo. F. Yantis,* for re-
spondent.

PEMBERTON, J.—Appellant is maintaining a dam
across Beaver creek, in Thurston county, Washington,
of three and one-half feet in height.  It filed its petition
in the court below, praying for the condemnation of
the right to maintain this dam and the right to dam-
age the lands affected by the maintenance of the same.
Respondent owns a farm situate on the creek above the
dam about six hundred feet therefrom.  It is claimed
by respondent that, although one-sixteenth of an acre
of land is covered by water as a result of the mainte-
nance of the dam, there is twelve and one-tenth acres
of land but two and one-half feet above the level of the
water in the creek as maintained, and an area of six-
teen and one-half acres but three and one-half feet
above the water level.  It is claimed that the presence

[1]Reported in 212 Pac. 1056.

of water permanently held by the dam, through capillary attraction, makes it impossible to drain this soil and it becomes cold and sour and unsuited for most crops.

The appellant in its brief, in speaking of the facts to be passed on by the jury, uses the following language:

"It (the jury) was required to say what portion, if any, of respondent's lands were soaked and water logged by percolation and by capillarity because of the maintenance of the dam on the plaintiff's property impinging, if at all, upon respondent's land to a very minute degree."

The jury having passed upon the facts and having found the damages to be in the amount of $600, we are satisfied that this finding of the jury should not be disturbed unless some error is disclosed by the record.

Appellant makes the contention that the court erred in denying the motion to strike the testimony of Mr. Stookey, one of the witnesses for the respondent "on the matter of the effect of a permanent water table, and the testimony of all witnesses as to values following and having in mind the testimony and condition of a permanent water table existing."

In explaining the effect of raising the water in the creek, upon the condition of the soil, and upon its ability to produce crops, the witness Stookey was asked: "What is generally considered the proper height of permanent water table? A. It shouldn't be closer than three feet." To this answer appellant objected, contending that the answer "should be connected with certain other conditions," to which attorney for respondent answered, "I will make that promise," and the court stated: "Yes, that will have to be done." It is the contention of appellant that this promise of respondent was not fulfilled, and that the

water table referred to consisted of some impervious subsoil which would hold the water and not permit it to sink into the ground.

Counsel for appellant state that "the promise to show the existence of an impermeable table two or three feet below respondent's land, interfering with the law of gravitation and inducing capillarity, was not kept, which fact, as we before pointed out, was drawn to the court's attention at the conclusion of the case by a motion to strike in ample time to permit the keeping of the promise. Thus the jury was given an opportunity to assume that beneath the respondent's land was situated such a permanent table as testified to by the expert."

It would seem that there is some confusion as to what a water table really is. The true meaning of "water table," when applied to the facts in this case, is:

"The upper limit of the portion of the ground wholly saturated with water. This may be very near the surface or many feet below it." Webster's New International Dictionary.

The impermeable subsoil is not the water table on which the water rests, but the upper limit of the water is the water table, and this is influenced by capillarity. The nature of the formation of the subsoil, so far as this case is concerned, is immaterial.

The jury found that the construction of the dam raised the water table to the injury of the respondent in the amount of $600. There being no error shown, the judgment will be affirmed.

MAIN, C. J., FULLERTON, PARKER, and TOLMAN, JJ., concur.